IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY HOUSING PARTNERSHIP,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES BYRD,<br><br>    Defendant. | Case No. 13-3031 JSC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (Dkt. No. 11)** |

Defendant Charles Byrd removed this unlawful detainer action from the Superior Court for the County of San Francisco asserting federal enclave jurisdiction because the property at issue is located on Treasure Island, a former naval base. Now pending before the Court is Plaintiff's motion to remand this unlawful detainer action to state court.[1] (Dkt. No. 11.) Having had the benefit of the parties' briefs, including their supplemental submissions regarding federal enclave jurisdiction, and having had the benefit of oral argument on September 19, 2013, the Court concludes that it at least has discretion to remand. In light of the lack of any federal interest in the case, the Court GRANTS Plaintiff's motion to remand and DENIES the parties' accompanying requests for fees and sanctions.

---

[1] Both parties consented to proceed before a U.S. magistrate judge in accordance with 28 U.S.C. § 636(c). (Dkt. Nos. 7, 10.)

**FACTUAL & PROCEDURAL BACKGROUND**

Community Housing Partnership ("Plaintiff") employed Charles Byrd ("Defendant") as a Resident Property Manager from May 10, 2002 through March 6, 2013. As part of his employment, Defendant was required to occupy the subject premises located on Treasure Island. On March 6, 2013, Defendant's employment with Plaintiff was terminated. On April 19, 2013, Plaintiff served Defendant with a 3-Day Notice of Termination of Occupancy, which stipulated that failure to vacate the premises would result in its filing an unlawful detainer action. Defendant failed to comply and remains in possession of the property. On May 2, 2013, Plaintiff filed an unlawful detainer action for less than $10,000 in the Superior Court for the County of San Francisco. Plaintiff states that Defendant was served with the Summons and Complaint on May 20, 2013 by posting and mailing pursuant to CAL. CIV. PROC. CODE § 415.45. (Dkt. No. 11 at 4:13–14.)

On July 1, 2013, Defendant removed the unlawful detainer action to federal court, asserting that original jurisdiction existed because the incident occurred on Treasure Island which is a federal enclave. Plaintiff subsequently moved to remand contending the Court is without jurisdiction to hear an unlawful detainer action, but not addressing the federal enclave issues raised in Defendant's removal. Defendant thereafter filed an opposition setting forth the basis for federal enclave jurisdiction, which Plaintiff responded to in its reply brief.

On September 19, 2013, the Court heard oral argument regarding the motion to remand. At oral argument, the Court ordered the parties to submit supplemental briefing. The parties have since done so and the issue is ripe for decision.

**LEGAL STANDARD**

A civil action filed in state court may be removed to federal court so long as the federal court has original jurisdiction. 28 U.S.C. § 1441. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law only "if either: (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Swords to Plowshares v. Kemp*,

2

423 F. Supp. 2d 1031, 1033 (N.D. Cal. 2005). A state-law claim may be treated as one "arising under" federal law "only where the vindication of the state-law right necessarily turns on some construction of federal law." *Id.* In federal enclave cases, federal court jurisdiction applies when the locus in which the claim arose is within the federal enclave itself. *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012).

The removal statutes are construed restrictively and the district court must remand the case if it appears at any time before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). There is a "strong presumption" against removal jurisdiction, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), and doubts as to removability are resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004). Thus, here, Defendant bears the burden of establishing that this Court has jurisdiction over Plaintiff's unlawful detainer claim.

**DISCUSSION**

Plaintiff challenges Defendant's removal on two grounds: (1) Defendant's notice of removal was untimely because it was filed outside of the mandatory removal period set forth in 28 U.S.C. § 1446(b); and (2) removal is improper because Treasure Island, while concededly still owned by the United States, is not a federal enclave and therefore is not subject to federal jurisdiction.

**I.    Timeliness of Removal Under 28 U.S.C. § 1446**

28 U.S.C. § 1446 sets forth the procedure for removal of civil actions to federal court. It requires that the removing party file a notice of removal "within 30 days after the receipt by

3

the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b).

Plaintiff served Defendant with the Summons and Complaint on May 20, 2013 "by posting order" pursuant to CAL. CIV. PROC. CODE § 415.45. (Dkt. No. 11 at 4:6-8.) This section provides that in an unlawful detainer action, a summons may be served by posting "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in any manner specified in this article...." *Id.* Importantly, however, Section 415.45(c) also states that "service of summons in this manner is deemed complete on the *tenth day after* posting and mailing." (emphasis added.) Therefore, Defendant had 40 days from May 20, 2013 by which to file his removal, and 40 days after May 20, 2013 is June 29, 2013, a Saturday. As Defendant points out, both Federal and State guidelines specify that if a deadline falls on a holiday or weekend, the time period "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6; *see also* CAL. CIV. PROC. CODE § 12; 59 Cal. Jur. 3d Time § 14 (West 2013). Thus, Defendant's notice of removal had to be filed by July 1, 2013, which it was.

Plaintiff counters that the time should run from the date on which Plaintiff received a copy of the summons, here, May 6, 2013, because that is the date the summons was delivered. (Dkt. No. 11, Ex. 2 ("The summons and complaint was slipped through the door on May 6, 2013...")). Plaintiff's theory, however, is foreclosed by United States Supreme Court precedent. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that triggering of the removal clock under 28 U.S.C. § 1446(b) requires more than "mere receipt of the complaint unattended by any formal service."). Accordingly, the removal time period must be counted from the time service of process was effectuated on the Defendant—here May 30th, 2013— rendering Defendant's Notice of Removal filed on July 1, 2013 timely.

4

## II. <u>Treasure Island's Status as a Federal Enclave</u>

The next question before the Court is whether Treasure Island is a federal enclave.[2] Article 1, Section 8, Clause 17 of the United States Constitution permits the federal government to "exercise exclusive Legislation...over all Places purchased by the consent of the State of the Legislature...for the Erection of Forts...and all other needful Buildings." *See Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1034 (N.D. Cal. 2005) ("The power to exercise 'exclusive legislation' holds the same meaning as 'exclusive jurisdiction.'") (internal citations omitted). Such purchases create territories known as federal enclaves.

### A. The Federal Purchase and Subsequent Partial Retrocession of Treasure Island

In 1942 the California legislature transferred Treasure Island to the United States for the purpose of constructing "an extensive naval establishment."[3] Second Extraordinary Session of Fifty-Fourth Legislature, ch. 3, 1942 Cal. Stat. 101–02 ("The State of California hereby consents to the acquisition of said lands by the United States...."). Prior legislation subjected the property to restrictions that apparently impeded such construction:

---

[2] Although Plaintiff originally sought remand on the basis that the complaint does not support federal jurisdiction because an unlawful detainer action is based "wholly on California law," Plaintiff has since reframed its position to concern the propriety of federal enclave jurisdiction. (Dkt. No. 11 at 6:19.)

[3] In support of its opposition to Plaintiff's motion to remand, Defendant requests the Court take judicial notice of several legislative documents regarding the transfer of California land to the federal government. (Dkt. No. 16.) Federal Rule of Evidence 201(b) permits a court to judicially notice a fact if it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The attached California statutes (copies of CAL. GOV'T CODE § 111 and 1942 Cal. Stat. 101–102) are matters of public record and are therefore properly subject to judicial notice. (Dkt. No. 16-1, 16-2.) The Court notices them accordingly. The Court likewise takes judicial notice of documents attached to Defendant's supplemental briefing including: (1) Minutes from the State Lands Commission regarding the U.S. Navy's retrocession of jurisdiction over Treasure and Yerba Buena Islands, (2) an article from the United States General Accountability Office on "Acquisition of Federal Jurisdiction" (*see* 2008 WL 6969324), (3) a letter from the United States Navy to California, dated May 14, 1997, requesting that California accept a change of jurisdiction over Treasure Island from "exclusive and partial legislative jurisdiction to concurrent legislative jurisdiction." (Dkt. Nos. 23, 27 & 28.)

5

> The United States of America now desires...these lands but only if unrestricted rights to the use and possession thereof may be acquired, which is not possible under existing law. The immediate necessities of the National defense require that provision be made without delay to provide for the acquisition of these lands by the United States as provided for herein.

*Id.* at 102. Plaintiff does not contest this transfer and acknowledges that the Island is still owned by the United States Navy; instead, it contests whether the transfer subjects the territory to exclusive federal jurisdiction, as is necessary to create federal subject matter jurisdiction. (*See* Dkt. No. 18 at 2–3.)

In *Swords*, the court denied a motion to remand an unlawful detainer action between private parties because the property in question was located in the Presidio, which it found to be a federal enclave subject to the exclusive jurisdiction of the United States. *Swords*, 423 F. Supp. 2d at 1037. The court reasoned that "[u]pon the transfer of exclusive jurisdiction of a site, from a state to the United States, the state laws in effect at the time continue in force as federal laws [and] rights arising under such assimilated law arise under federal law and are properly the subject of federal jurisdiction." *Id.* at 1038 (internal citations and alterations omitted).

The Presidio was transferred to the United States in 1897, *Swords*, 423 F. Supp. 2d at 1034, and until 1940 acceptance of jurisdiction over lands acquired by the United States was presumed in the absence of evidence to the contrary and the federal jurisdiction was considered exclusive of all state authority. *U.S. v. Cassidy*, 571 F.2d 534, 536 (10th Cir. 1978); *see also U.S. v. Johnson*, 426 F.2d 1112, 1114–15 (7th Cir. 1970). In 1940 Congress enacted legislation removing this presumption and instead provided that "[i]t is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction" by "filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112 (formerly 40 U.S.C. § 255). This ensures "a definite method of acceptance of jurisdiction so that all persons could know whether the government had obtained 'no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction." *Adams v. United States*, 319 U.S. 312, 314 (1943). In *Adams*, the Court found federal jurisdiction was lacking where the government failed to

comply with the statute's procedures. *Id.* at 315 ("Since the government had not accepted jurisdiction in the manner required by the Act the federal court had no jurisdiction of this proceeding."). Thus, "in the absence of an explicit acceptance of jurisdiction by the federal government, the federal government's possession is 'simply that of an ordinary proprietor'" and does not give rise to federal subject matter jurisdiction. *U.S. v. Davis*, 726 F.3d 357, 364 (2d Cir. 2013) (internal citation omitted). Since Treasure Island was ceded to the United States in 1942, it is subject to 40 U.S.C. § 3112 (formerly 40 U.S.C. § 255) and the United States must formally accept the cession in order for federal jurisdiction to exist. State records demonstrate that in 1943 the United States Navy complied with the requirement by filing a notice of acceptance with the Governor of California. Letter from James Forrestal, Secretary of the U.S. Navy, to Earl Warren, Governor of California (April 1, 1943) (on file with the California State Archives). However, in 1997 the Navy retroceded "exclusive and partial legislative jurisdiction" to California and expressly provided for the establishment of concurrent federal and state jurisdiction over the lands comprising Naval Station Treasure Island and Yerba Buena Island. (*See* Dkt. No. 23-1 at 3.)

      Plaintiff contends that this non-exclusive jurisdictional status "defeats the argument that a federal enclave continues to exist." (Dkt. No. 29 at 2:20.) This argument appears to conflate the term "federal enclave," a term generally used to refer to any territory transferred pursuant Article 1, Section 8, Clause 17 of the U.S. Constitution, with the existence of "exclusive legislation" or exclusive federal jurisdiction. Limitations on exclusivity by reservation of state authority do not negate federal enclave status or the possibility of federal jurisdiction. *See Paul v. United States*, 371 U.S. 245, 265 (1963) ("A State may condition its 'consent' upon its retention of jurisdiction over the lands consistent with federal use."); *see also Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 530 (1938) ("jurisdiction less than exclusive may be granted to the United States."). Therefore, simply because California has retained some degree of authority over the land in question does not ipso facto preclude federal jurisdiction. In light of the Supreme Court's unambiguous assertion that "jurisdiction less than exclusive may be granted to the United States," *Collins*, 304 U.S. at 530, and to

ensure that the cession clause is not so narrowly construed "as to usurp jurisdiction from the United States" *Swords*, 423 F. Supp. 2d at 1036, the Court finds Treasure Island is still a federal enclave, albeit one subject to concurrent jurisdiction.

### B. Remand is Warranted Because the United States and California Share Concurrent Jurisdiction Over Treasure Island

Having concluded that Treasure Island is a federal enclave, and in light of the parties' agreement that jurisdiction over claims arising from Treasure Island is concurrent (*see* Dkt. No. 22 at 2:10–11; Dkt. No. 29 at 2:14–15), the Court must determine whether the grant of *concurrent* jurisdiction over Treasure Island is sufficient to establish federal subject matter jurisdiction over the state law unlawful detainer claim. "The determining factor for removal of unlawful detainers is whether federal subject matter jurisdiction exists, either on the basis of diversity jurisdiction or federal question jurisdiction." *Swords*, 423 F. Supp. 2d at 1037. Since both parties here are residents of California there is no diversity jurisdiction; rather, Defendant must show that the unlawful detainer action presents a federal question. This can be done by showing either: (a) the cause of action is created by federal law, or (b) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *City of Chi. v. Int'l College of Surgeons*, 552 U.S. 156, 164 (1997); *see also Quildon v. Intuit, Inc.*, No. 5:12-CV-00859, 2012 WL 1902021, at * 2 (N.D. Cal. May 25, 2012).

Some courts have found that state law claims arising within federal enclaves subject to *exclusive* legislative jurisdiction may present a substantial federal question such that they can be brought in federal courts. *See, e.g.*, *Swords*, 423 F. Supp. 2d at 1034; *Durham v. Lockheed Martin Corp.*, 443 F.3d 1247, 1250 (9th Cir. 2006) (noting that "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves'" without addressing the extent of federal jurisdiction). The reasoning for doing so is often grounded in a concept of 'federalized' state law that occurs in areas of exclusive jurisdiction. *See Swords*, 423 F. Supp. 2d at 1038 ("Upon the transfer of exclusive jurisdiction of a site, from a state to the United States, the state laws in effect at the time continue in force as federal laws. Rights arising

8

1    under such assimilated law, arise under federal law and are properly the subject of federal
2    jurisdiction.") (internal citations and quotations omitted).  "This assures that no area, however
3    small, will be left without laws regulating private rights." *Mater v. Holley*, 200 F.2d 123, 124
4    (5th Cir. 1952).  This reasoning is not applicable to an area subject to concurrent jurisdiction.
5         For example, in *Swords*, the Court placed a heavy emphasis on the existence of
6    *exclusive* rather than concurrent jurisdiction.  When countering the plaintiff's reliance on
7    *Round Valley Indian Hous. Auth. v. Hunter*, 907 F. Supp. 1343 (N.D. Cal. 1995), a case in
8    which an unlawful detainer action on Indian trust land was remanded for lack of federal
9    subject matter jurisdiction, the court reasoned:

> While the facts of *Round Valley* are similar, there is one major distinction: federally owned Indian lands are not subject to exclusive federal jurisdiction. Exclusive jurisdiction in federal enclaves has been interpreted to specifically convey federal jurisdiction in relation to the property and activities of individuals and corporations within the territory.  Jurisdiction over Indian trust lands, conversely, is split between federal and state jurisdiction.

*Swords*, 423 F.Supp.2ds at 1037 (internal citations omitted).  Although the jurisdictional treatment of Indian trust land is distinct from that of federal enclaves, the distinction drawn in *Swords* reveals the marked jurisdictional difference between a territory subject to exclusive rather than concurrent jurisdiction.  *See id.* ("...the states in which the Indian lands are located have jurisdiction over civil causes of action...Federal jurisdiction, however, was retained for adjudication in probate proceedings...").

     In his supplemental brief, Defendant cites a multitude of cases which fail to directly address the critical issue; namely, whether federal jurisdiction over a state law claim is proper where jurisdiction has been retroceded to establish concurrent jurisdiction.  The cases cited by Defendant instead involve the exercise of federal jurisdiction over matters arising in territories that had retained state jurisdiction at the original point of cession solely for the limited purpose of serving civil and criminal state process. *See e.g.*, *U.S. v. Dreos*, 156 F. Supp. 200 (D. Md. 1950); *Olsen v. McPartlin*, 105 F. Supp. 561, 563 (D. Minn. 1952); *U.S. v. 319.88 Acres of Land, More or Less, Situate in Clark Cnty., Nev.*, 498 F. Supp. 763, 772 (D. Nev. 1980).)

9

In fact, many state statutes ceding *exclusive* jurisdiction to the United States contain a provision providing for state authority over service of process. *See, e.g.*, *Swords*, 423 F. Supp. 2d at 1034–35 (notwithstanding the court's finding that the Presidio is subject to exclusive federal jurisdiction, the court noted that the Act ceding the Presidio "also reserves to the State the right to serve and execute civil and limited criminal process.") This limited retention of state power to serve and execute civil and criminal process is distinguishable from this case, where the federal government took affirmative steps to comply with formal retrocession procedures that removed the "exclusive and partial legislative jurisdiction" over Treasure Island and replaced it with concurrent jurisdiction between California and the United States. S*ee* CAL. GOV'T CODE § 113. Therefore, instances where the courts have found federal subject matter jurisdiction notwithstanding a reservation to the state to serve state process are not persuasive.

Defendant also includes a citation to *Willis v. Craig*, 555 F.2d 724 (9th Cir. 1977), a short remand decision directing the district court to conduct further proceedings regarding subject matter jurisdiction because the record was not clear whether the underlying tort occurred on a federal enclave. Although not specifically addressed by Defendant, *Willis* states in a footnote: "We have no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction." *Id.* at 726 n.4 (citing *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952)). The court's footnote comment is dicta rather than an endorsement of federal subject matter jurisdiction over federal enclaves subject to concurrent jurisdiction. Moreover, *Willis's* reliance on *Mater* suggests that the Ninth Circuit did not mean that concurrent jurisdiction creates federal subject matter jurisdiction. In *Mater*, the Fifth Circuit considered whether federal jurisdiction was proper over a personal injury that occurred on a federal enclave subject to exclusive jurisdiction. 200 F.2d at 124. There is no dispute that in light of the 1997 retrocession Treasure Island is not subject to exclusive federal jurisdiction.

Although not cited by the parties, the Court was able to locate one decision that directly addresses the propriety of federal jurisdiction when a state law claim arises on a federal enclave that has been retroceded to the point of concurrent jurisdiction. *See Federico v. Lincoln Military Hous.*, 901 F. Supp. 2d 654, 668 (E.D. Va. 2012). In *Federico*, plaintiffs were military housing residents bringing suit against their property manager for "failing to keep their premises free from toxic mold growths." *Id.* at 656. The property manager was in a public-private venture with the Navy and managed over 31,000 military homes nationwide. In denying the motion to remand, the court reasoned that the presence of concurrent jurisdiction should not "automatically bar a federal court from hearing state law claims" because the ultimate inquiry is whether the claims present a "compelling argument" for federal subject matter jurisdiction. *Id.* at 672. The court concluded there was "no question" that the facts and the parties presented "unique and significant" federal interests since "almost everything in th[e] case implicates the United States Navy in one form or another." *Id.* at 673.

The circumstances here are easily distinguishable from *Federico*. Plaintiff is a San Francisco-based housing organization bringing an unlawful detainer action, which is grounded entirely in California statute, against its former property manager. *See* CAL. CIV. PROC. CODE §§ 1161, 1179(a); *see also Nork v. Pacific Coast Medical Enterprises, Inc.*, 73 Cal.App.3d 410, 413 (Cal. Ct. App. 1977) ("The purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property when a tenant fails to pay the rent or refuses to vacate the premises at the end of his tenancy.") Neither the claim nor the parties present a substantial question of federal law. Even Defendant has acknowledged that remand is "more likely" in the presence of concurrent jurisdiction, candidly conceding that he "must agree that remand is appropriate and warranted" if the court determines "that where federal legislative jurisdiction is not exclusive, but concurrent, a substantial federal interest must exist to support jurisdiction." (Dkt. No. 22 at 2:13 and 5:24-27.)

Accordingly, without any clear authority to support Defendant's removal of a state law claim when the federal enclave property in question is subject to concurrent jurisdiction, the Court is left with "significant doubt[s] as to the appropriateness of the removal." *Quildon*, 2012 WL 1902021 at *5. Since "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," the Court declines to exercise jurisdiction and instead remands this unlawful detainer to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (finding that regard for the independence of state governments requires federal courts to "scrupulously confine" their own jurisdiction to the precise limits which the statute has defined); *Quildon*, 2012 WL 1902021, at * 5 ( "A congressional mandate of concurrent jurisdiction coupled with predominate state law issues would lead this court to find federal jurisdiction inappropriate in the balance of responsibility.").

### III.     Parties' Request for Attorneys' Fees and Rule 11 Sanctions

Plaintiff's motion for remand also seeks attorney fees and other just costs under 28 U.S.C. § 1447(c). This Section provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). District courts retain discretion "to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* at 141. "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.,* 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, the objective reasonableness of a removal depends on the clarity of the applicable law and whether such law "clearly foreclosed" the arguments in support of removal. *Id.* at 1066–67.

Here, the applicable law is not so clear as to foreclose the removal, and Defendant had "an objectively reasonable" basis for removal considering Treasure Island's complex

jurisdictional history and precedent from this Court supporting the removal of an unlawful detainer action based on federal enclave status. *See Swords*, 423 F. Supp. 2d. 1031. Thus, Plaintiff's request for fees and costs under 28 U.S.C. § 1447(c) is DENIED.

In his opposition brief, Defendant seeks sanctions based on Plaintiff's request for sanctions and also seeks fees under 28 U.S.C. § 1927, which provides for an assignment of attorneys fees against a party "who so multiplies the proceedings in any case unreasonably and vexatiously...." Section 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun," and it must be supported by a finding of subjective bad faith. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (internal citations omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* When awarding sanctions under Section 1927, district courts have discretion in determining whether sanctions are appropriate. *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). This is a punitive statute and correspondingly must be construed restrictively. *Harriston v. Chicago Tribune Co.*, 136 F.R.D. 482, 485 (N.D. Ill. 1991). Since the Court is ruling in Plaintiff's favor, Defendant is not entitled to fees. Thus, Defendant's requests for sanctions are also DENIED.

## CONCLUSION

For the reasons explained above, Plaintiff's motion to remand this action to the San Francisco Superior Court is GRANTED.

**IT IS SO ORDERED.**

Dated: November 19, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE